IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

American Steamship Owners' Mutual
Protection and Indemnity Association, Inc.

v.

Dann Ocean Towing, Inc., et al.

Civil No. CCB-08-2195
**IN ADMIRALTY**

# MEMORANDUM

This case arises out of a marine insurance contract between American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("American Club" or the "Club) and Dann Ocean Towing, Inc. and its subsidiary Dann Towing Company (collectively "DOT"). American Club has sued the defendants for breach of marine contract, and the defendants have counterclaimed for breach of the same contract. At issue is the timeliness of the parties' claims and counterclaims and, specifically, whether the claims arising from the contract are governed by laches or the New York state statute of limitations. For the reasons set forth below, the court finds that by virtue of the choice-of-law provision in the marine contract, the claims and counterclaims at issue are governed by New York's six-year statute of limitations for contract actions.

# BACKGROUND

The facts of this case have been recited in detail in the court's previous rulings. *See Steamship I,* 2010 WL 3447651 (D. Md. Aug. 30, 2010), and *Steamship II*, 2011 WL 3471524 (D. Md. Aug. 8, 2011). In brief, American Club is a non-profit mutual protection and indemnity

1

association that provides marine insurance to ship owners, their managers, and charterers against third-party liabilities encountered in their commercial operation of vessels. DOT is a company that manages and operates a fleet of tugboats. DOT was a member of the Club from 1995 to 2001.

This suit arose from an incident in July 1998 in which a tugboat operated by DOT ran aground on a coral reef in Biscayne National Park in Florida. DOT conceded liability, but one of its underwriters went into receivership and could not pay its portion of DOT's settlement for damage to the barge the tug was towing. DOT claimed that as its excess insurer, the Club was liable for the shortfall; the Club denied liability. The Club advanced DOT the amount of the shortfall in December 2001 in order to preserve an "extremely favorable settlement," but continued to deny all responsibility for the shortfall. In response to the Club's refusal to assume liability for the shortfall, DOT stopped paying its premiums. The Club, in turn, refused to reimburse DOT for claims, instead offsetting those claims against DOT's unpaid premiums. The Club filed this lawsuit on August 21, 2008, alleging breach of contract and seeking to recover for the amount of the shortfall ($278,552.50) and the unpaid premiums. DOT counterclaimed for breach of the same contract, seeking indemnification on the claims covered by its insurance policies.

The terms of the insurance coverage DOT received from the Club are articulated in the By-Laws and Rules of the Association. (*See* By-Laws and Rules of the American Steamship Owners Mutual Protection and Indemnity Association, Inc., ECF No. 89-2.) Relevant to this dispute, the Rules include the following choice-of-law clause: "These Rules and any contract of insurance between the Association and a member shall be governed by and construed in

accordance with the law of the State of New York." (Rule 1 § 15, *id.* at 27.) The Rules also provide a two-year contractual limitations period for lawsuits against the Club. (Rule 1 § 15, *id.*)

Under New York law, a breach of contract action must be "commenced within six years." N.Y. C.P.L.R. § 213(2). As noted in *Steamship I,* New York law provides that a cause of action in contract accrues from the time of the breach, when the "plaintiff possesses a legal right to demand payment." *TIG Ins. Co. v. Newmont Mining Corp.,* 413 F.Supp.2d 273, 281 (S.D.N.Y. 2005) (internal quotation marks omitted). DOT and American Club agree that the Club's claim for the settlement shortfall accrued when the Club advanced DOT the shortfall, in December 2001 – six years and nine months before this case was filed.[1]

In *Steamship I*, the court held that DOT, not the Club, was liable for the shortfall. The court also held that the Club's claim for the shortfall was timely under a laches analysis. In *Steamship II,* the court denied the parties' cross-motions for summary judgment as well as the Club's motion to adjust the amount of security required by each party to guarantee payment of pending claims. The court noted DOT's continuing argument that the Club's claim for shortfall is properly governed by the New York state statute of limitations, not the doctrine of laches. Consequently, the court requested that the parties address the applicability of the doctrines of equitable estoppel and recoupment in the event that the New York statute of limitations applied.

---

[1] Although the record remains incomplete, it appears that most of the Club's claims against DOT for unpaid premiums would be untimely under the New York statute of limitations. The only premium that came due within six years of August 21, 2008 was the "supplemental call" for $76,925.56 due on November 20, 2002. (See *Steamship II*, 2011 WL 3471524 *2-3 for detailed breakdown of the premiums owed.) It is less clear which of DOT's cross-claims for indemnification would be timely under the six-year statute of limitations; additional factual development would be required to determine exactly when each of the dozens of individual claims arose. Moreover, neither party has discussed the applicability of the two-year statute of limitations period for claims against the Club, which may constitute a defense to DOT's claim for indemnification.

Upon further briefing, the court now reconsiders its prior ruling and concludes that the New York statute of limitations applies to claims arising under the marine insurance contract.[2] With respect to the applicability of the doctrine of recoupment under state law, the court will decline to rule. Although there may be an argument under the doctrine of recoupment for the Club to assert its otherwise untimely claims for unpaid premiums as a shield against DOT's claims for indemnification, the Club has not made that argument or presented evidence to support it.[3]

## ANALYSIS

The question before the court is whether the choice-of-law provision in the maritime insurance contract overrides the typical presumption that courts sitting in admiralty jurisdiction apply the equitable doctrine of laches rather than a specific statute of limitations.

A contract to insure a ship is a maritime contract. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961). Unlike an ordinary contract case under diversity jurisdiction in which state choice-of-law rules apply, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), federal common law provides the choice-of-law rules that apply in maritime cases. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 890 (5th Cir. 1991). Because federal choice-of-law rules

---

[2] In its initial briefing, DOT argued that the New York state statute of limitations should apply because of the contract's choice-of-law provision, but it cited no cases supporting the proposition that a court sitting in admiralty jurisdiction could apply a state law statute of limitations in a claim for breach of a marine insurance contract or that parties could contract around federal admiralty law with respect to statutes of limitations.

[3] Since *Steamship II* was issued, DOT has submitted a memorandum asserting once again that the six-year New York state statute of limitations applies to the Club's claims. (ECF No. 105.) DOT also argued that recoupment and equitable estoppel were inapplicable. DOT asserted that it cannot be estopped from asserting a statute of limitations defense because of the absence of affirmative misconduct on its part. Moreover, DOT argued, the doctrine of recoupment cannot apply to the Club's claims because the Club is the plaintiff, not the defendant, in the suit. (*Id.*) The Club's filings did not address recoupment or equitable estoppel and instead simply maintained that the court should apply the admiralty doctrine of laches and find that the Club's claims are not time-barred. (ECF No. 106.)

apply, federal law governs whether the choice-of-law provision in the Rules is enforceable. *See Triton Marine Fuels Ltd., S.A. v. M/V PACIFIC CHUKOTKA*, 575 F.3d 409, 413 (4th Cir. 2009).

The Fourth Circuit has held that "[i]t is well established under federal maritime law that absent a compelling reason of public policy, a freely negotiated choice-of-law clause in a maritime contract should be enforced." *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972); *Lauritzen v. Larsen*, 345 U.S. 571, 588-89 (1953); *Bominflot, Inc. v. M/V HENRICH S*, 465 F.3d 144, 148 (4th Cir. 2006). The court noted that "[w]here the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice." *Hawkspere Shipping Co., Ltd. v. Intamex, S.A.*, 330 F.3d 225, 233 (4th Cir. 2003) (internal quotations omitted). Other courts sitting in admiralty jurisdiction have also held that that "parties are free to 'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract." *King v. Allstate Ins. Co.*, 906 F.2d 1537, 1540 (11th Cir. 1990). In this case, neither party asserts that there is any "compelling reason of public policy," *Triton Marine Fuels*, 575 F.3d at 413, that would render the choice-of-law clause unenforceable.[4]

Few courts have considered the specific issue of whether parties can contract around laches in the admiralty context, but those that have taken up the question have concluded that a choice-of-law clause compels the application of the elected jurisdiction's statute of limitations.

---

[4] Other circuits have articulated the standard differently, relying on §187(2) of the Restatement (Second) of Conflict of Laws to determine whether a choice-of-law clause is enforceable. *See, e.g.*, *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242-44 (5th Cir. 2009); *Flores v. American Seafoods Co.*, 335 F.3d 904, 916-17 (9th Cir. 2003). Under that formulation, a choice-of-law clause is enforceable unless, in some circumstances, "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." Rest. (2d.) of Conflict of Laws § 187(2) (1971). In either case, the choice-of-law clause in this contract would be valid and enforceable.

In *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151 (9th Cir. 2009), a ship owner sought indemnification from a shipbuilder for injuries sustained by a worker on the ship. *Id.* at 1162. The choice-of-law clause in the shipbuilding contract was broad, providing that "all disputes arising out of or in connection with [the agreement] . . . shall be construed in accordance with and shall be governed by the Dutch law." *Id.* The court concluded that not only breach-of-contract claims, but also tort claims (which underpinned the claims for indemnification), were governed by Dutch law, including the Dutch statutes of limitations for negligence and strict liability claims. *Id.* at 1163. In this case, the choice-of-law clause is not as broad as in *Cooper*, but nonetheless is sufficiently broad to encompass the breach-of-contract claims raised by the Club and DOT.

The District Court for the Northern District of California recently reached the same conclusion. *See Italia Marittima, S.P.A. v. Seaside Transp. Services, LLC*, 2010 WL 3504834 (N.D. Cal. Sept. 7, 2010).[5] One of the claims in *Italia Marittima* arose out of a contract between Seaside Transportation Services, LLC and Marine Terminals Corporation ("MTC") under which MTC would provide stevedoring services to Italia. The contract included the following choice-of-law clause:

> [The contract] shall be construed, interpreted and enforced in accordance with the laws of the State of California without reference to the laws of any other jurisdiction, except to the extent that the laws, rules and regulations of the United States of America shall apply.

*Id.* at *8. Italia argued that under that provision, California law applied "only when federal law is silent." *Id.* Because the doctrine of laches exists in maritime law, Italia reasoned, federal law is not silent and therefore governs the timeliness of their claims. The court rejected that interpretation, concluding that the laches doctrine is a common law doctrine, not a "codified law,

---

[5] Unpublished cases are not binding precedent and are cited only for their reasoning.

rule, or regulation," and therefore the California statute of limitations, not maritime laches, applies.[6] *Id.*

This finding is consistent with other admiralty cases in which courts have considered whether a choice-of-law clause provides the applicable law; they have held that the chosen law governs the particular issue before the court. *See Triton Marine Fuels*, 575 F.3d at 49 (availability of maritime lien); *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 986, 988 (5th Cir. 1992) (same); *Flores*, 335 F.3d at 919 (attorneys' fees); *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997) (limits on recoverable damages); *see also St. Paul Fire & Marine Ins. Co. v. Bd. of Commissioners of the Port of New Orleans*, 418 Fed. Appx. 305, 309 (5th Cir. 2011) (effect of late notice of claim); *Zepsa Indus., Inc. v. Kimble*, 2008 WL 4891115, *4 (W.D.N.C. 2008) (availability of loss-of-use damages). Accordingly, upon reconsideration this court finds that claims arising from the maritime insurance contract between DOT and the Club are subject to New York's six-year statute of limitations, not laches.

*Recoupment and Equitable Estoppel*

As set forth in *Steamship II*, New York law provides that a defendant may be estopped from raising a statute of limitations defense if the defendant "engaged in any affirmative misconduct, i.e., fraud, misrepresentation, or deception, to induce [the plaintiff] to refrain from filing a timely action." *Nowacki v. Becker*, 897 N.Y.S.2d 560, 561 (N.Y. App. Div. 2010). The

---

[6] The Club cited *Italia Marittima* for the incorrect proposition that statutes of limitation cannot be applied in the admiralty context. (ECF No. 106, p. 5.) To the contrary, *Italia Marittima* held that while laches applied to claims that were *not* governed by a contract with a state choice-of-law provision, the state statute of limitations was the relevant measure of timeliness where a choice-of-law provision applied. 2010 WL 3504834 *8. The Club also cited *Celeste v. Prudential-Grace Lines*, 35 N.Y.2d 60 (1974), and *Turner v. Neptune Towing and Recovery, Inc.*, 2011 WL 5104443 (M.D. Fla. 2011), for the notion that laches is the proper measure of timeliness for a maritime case. (ECF No. 106, p. 6.) These cases, however, are inapposite for our purposes because there was no choice-of-law provision at issue in either *Celeste* or *Turner*.

plaintiff must show that the defendant "intended to lull the [plaintiff] into inactivity and to induce [the plaintiff] to continue negotiations until after the Statute of Limitations had run." *In re Allstate Ins. Co.*, 720 N.Y.S.2d 685, 686 (N.Y. App. Div. 2001). Stated differently, the plaintiff must point to evidence "indicating defendant intended to relinquish its right to pursue the [statute of limitations] defense." *JCH Delta Contracting, Inc. v. City of New York*, 843 N.Y.S.2d 245, 246 (N.Y. App. Div. 2007).

There is no evidence before the court indicating that DOT intended to lull the Club into sleeping on its rights by offering to settle or that it undertook any affirmative misconduct to induce the Club not to file a timely action. Moreover, the Club has not argued for the application of equitable estoppel. Accordingly, the court finds that DOT is not equitably estopped from asserting a statute of limitations defense under New York law.

With respect to recoupment, there may be an argument that the doctrine of recoupment entitles the Club to assert its otherwise untimely claims for unpaid premiums as a shield against DOT's claims for indemnification. Under New York law, if two parties to a contract each allege that the other breached the contract, and if one party's claim is barred by the statute of limitations and the other's claim is not, the untimely claim "is not barred [by the statute of limitations] to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed." N.Y. C.P.L.R. § 203(d). Thus "claims and defenses that arise out of the same transaction as a claim asserted in the complaint are not barred by the Statute of Limitations," even where a separate action by one party might otherwise have been time-barred. *Bloomfield v. Bloomfield*, 97 N.Y.2d 188, 193, 764 N.E.2d 950, 952 (2001). "The provisions of CPLR § 203(d) allow a defendant to assert an otherwise untimely claim which arose out of the same transactions alleged in the complaint, but only as a shield for recoupment

purposes, and does not permit the defendant to obtain affirmative relief." *DeMille v. DeMille*, 5 A.D.3d 428, 429, 774 N.Y.S.2d 156 (2004).  If recoupment applied to this case, the Club could assert its otherwise untimely claims against DOT for unpaid premiums as a shield against DOT's claims for indemnification.  The Club, however, has not briefed the applicability of recoupment in spite of the court's request that both parties address recoupment and equitable estoppel.  *See Steamship II,* 2011 WL 3471524 *7.  Accordingly, the court will not rule on the issue at this time.

In summary, the court finds that the parties' claims are subject to the New York state statute of limitations. Accordingly, a status report is requested by **May 25, 2012**, agreed-upon to the extent possible, proposing any further proceedings that may be necessary to resolve this case.

May 1, 2012                       ___/s/___
Date                                 Catherine C. Blake
                                               United States District Judge