IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC. | : : : : | |
| v. | : : | CIVIL NO. CCB-08-2195 |
| DANN OCEAN TOWING, INC., et al. | : : | **IN ADMIRALTY** |

## MEMORANDUM

Now pending before the court is a motion filed by the plaintiff, American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("American Club" or the "Club"), for summary judgment on its claims and to dismiss the counterclaims filed by Dann Ocean Towing, Inc., and its subsidiary, Dann Towing Company (collectively, "DOT"). American Club has sued DOT for breach of a marine insurance contract, and DOT has counterclaimed for breach of the same contract. The motion has been fully briefed and no oral argument is necessary. For the reasons set forth below, American Club's motion will be granted in part and denied in part.

## BACKGROUND

The facts of this case have been recited in detail in the court's previous rulings. *See Steamship I*, 2010 WL 3447651 (D. Md. Aug. 30, 2010), and *Steamship II*, 2011 WL 3471524 (D. Md. Aug. 8, 2011). In brief, American Club is a non-profit mutual protection and indemnity ("P & I") association that provides marine insurance to ship owners, their managers, and charterers against third-party liabilities encountered in their commercial operation of vessels. DOT is a company that manages and operates a fleet of tugboats. DOT was a member of the Club from 1995 to 2001.

The terms of the insurance coverage DOT received from the Club are articulated in the By-Laws and Rules of the Association. (*See* By-Laws and Rules of the American Steamship

1

Owners Mutual Protection and Indemnity Association, Inc., ECF No. 89-2.) The Rules include a choice-of-law clause stating that any insurance contract "between the Association and a member shall be governed by and construed in accordance with the law of the State of New York." (Rule 1 § 15, *id.* at 27.) The Rules also provide a two-year contractual limitations period for lawsuits against the Club. (Rule 1 § 15, *id.*) ("In no event shall suit on any claim be maintainable against the Association unless commenced within two years after the loss, damage, or expense resulting from liabilities, risks, events, occurrences and expenditures specified under this Rule shall have been paid by the Member.")

This suit arose from an incident in July 1998 involving the Tug Allie B, operated by DOT. The Tug Allie B was towing a barge when it grounded on a coral reef in Biscayne National Park in Florida. DOT conceded liability, but one of its underwriters went into receivership and could not pay its portion of DOT's settlement for damage to the barge the tug was towing. DOT claimed that as its excess insurer, the Club was liable for the shortfall; the Club denied liability. The Club advanced DOT the amount of the shortfall in December 2001 in order to preserve an "extremely favorable settlement," but continued to deny all responsibility for the shortfall. In response to the Club's refusal to assume liability for the shortfall, in February 2002, DOT stopped paying its premiums.

In or around September 2002, by which point six premiums were already overdue, DOT began paying a portion of the calls that had come due. DOT did not pay them to the Club, however; instead, it set up a "call account" with Windward International, the insurance broker through which DOT had arranged the P & I coverage by the Club. (*See* Defs.' Mem., ECF No. 90-1, at 5; Cacici Dep., ECF No. 75-3, at 7-8; Dann Aff., ECF No. 75-1, ¶ 15; Moore Aff. 1, ECF No. 64-3, ¶¶ 12-13.) Under this arrangement, DOT would pay into the call account the

premiums it owed to the Club. Although DOT concedes that the Club did not "agree[ ]" to this arrangement with Windward, the Club was aware of it. (Cacici Dep., ECF No. 75-3, at 13-14; *see also* Moore Fax, ECF No. 89-4, at 5.) Of the $452,610.23 in premiums DOT never paid the Club, DOT paid $175,146.70 to Windward. (Power Dep., Ex. 2, ECF No. 75-5, at 38.) The parties continued to negotiate over DOT's repayment of the shortfall, but were unable to reach an agreement.

Throughout this time, DOT continued to submit claims to the Club, the Club continued to process the claims and, when a claim was covered by one of DOT's policies, the Club approved the claims. The Club did not reimburse DOT for any of those claims, however, including those it approved. Rather, in January 2003, the Club began offsetting the shortfall against DOT's claims for reimbursement. As a result, DOT turned to Windward for reimbursement. For claims DOT submitted to the Club and the Club approved, Windward would reimburse DOT from the call account. (Dann Aff., ECF No. 75-1, ¶ 15.) By early 2003, DOT had ceased paying its premiums to the Club and the Club had ceased reimbursing DOT even for indisputably covered claims.

*Procedural History*

On August 21, 2008, the Club filed this lawsuit, alleging breach of contract and seeking to recover for the amount of the shortfall ($278,552.50) and unpaid premiums totaling $452,610.23. (Moore Aff. 2, ECF No. 89-4, ¶ 9). The Club also moved for issuance of a warrant for arrest and writ of maritime garnishment against the Captain Dann against which to enforce a potential judgment. This court granted the motion and denied DOT's subsequent motion to quash, vacate, and set aside the maritime attachment and garnishment. (*See* ECF Nos. 39-40.)

In *Steamship I*, the court held that DOT, not the Club, was liable for the shortfall. The court also held that the Club's claim for the shortfall was timely under a laches analysis. In

*Steamship II*, the court denied the parties' cross-motions for summary judgment as well as the Club's motion to adjust the amount of security required by each party to guarantee payment of pending claims. The court noted DOT's argument that the Club's claim for shortfall is properly governed by the New York state statute of limitations, not the doctrine of laches. As a consequence, the court asked the parties to address the applicability of the doctrines of equitable estoppel and recoupment in the event that the New York statute of limitations applied. The court subsequently reconsidered its ruling in *Steamship I*, concluding that claims arising from the contract are subject to New York's six-year statute of limitations. *See Steamship III*, 2012 WL 1565141, *2 (D. Md. May 1, 2012). The court noted that most of the Club's claims against DOT for unpaid premiums would be untimely under New York's statute of limitations, and that the only premium that came due within six years of August 21, 2008, was the "supplemental call" for $76,925.56 due on November 20, 2002.[1] *Id.* at *2 n. 1. In response, on June 7, 2012, DOT filed a motion to reduce the security on file with the court from $500,000 to $100,000. On June 29, 2012, the Club filed a motion for summary judgment on its claim for the unpaid premium due on November 20, 2002. The Club also moved to dismiss DOT's claims for indemnification.

## ANALYSIS

*Standard of Review*

Motion to Dismiss

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially

---

[1] The court declined to rule with respect to the applicability of the doctrine of recoupment under state law because the Club had not made that argument or presented evidence to support it.

4

aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

*Discussion*

Under New York law, it is well established that parties to a contract may designate a reasonable period of limitations within which a claim arising out of the contract must be commenced, even if that period is shorter than the statutory period. N.Y. C.P.L.R. § 201; *First Roumanian Am. Congregation v. GuideOne Mut. Ins. Co.*, 862 F. Supp. 2d 293, 304 (S.D.N.Y. 2012). "Failure to comply with a contractual limitations period will subject the action to dismissal, absent proof that the limitations provision was obtained through fraud, duress, or other wrongdoing." *Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 606-07 (S.D.N.Y. 2008) (citing cases).

In this case, Rule 1, § 15 clearly and unequivocally states that a Member does not have the right to bring an action against the Club "unless commenced within two years after the loss,

damage, or expense resulting from liabilities, risks, events, occurrences and expenditures specified under this Rule shall have been paid by the Member." It is undisputed that the two-year limitations period expired before DOT filed its counterclaims. Nonetheless, DOT argues that equitable estoppel prevents the Club from raising a time limitations defense to DOT's claims for indemnification.

"[T]he Sine qua non of an estoppel is some inequitable or fraudulent conduct engaged in by the party sought to be estopped which is reasonably relied upon by the other party to his detriment." *Redington v. Hartford Acc. & Indem. Co.*, 463 F. Supp. 83, 86-87 (S.D.N.Y. 1978) (citing cases under New York law). "Generally, in the area of shortened periods of limitations, the conduct giving rise to the estoppel consists of one party misrepresenting to the other party that strict compliance with the shortened period will not be required, and thereafter asserting it as a defense upon commencement of an untimely action." *Id.* at 87. Here, DOT has offered no evidence that the Club ever represented to DOT, either directly or indirectly, that strict compliance with the limitations period set forth in the policy would not be required. Accordingly, the court concludes that the policy's two-year limitations provision is reasonable and enforceable.[2]

Although DOT's claims for indemnification would be time-barred in their entirety under the terms of the contract, the doctrine of recoupment permits DOT's claims to be used defensively to offset the Club's surviving claim for the $76,925.56 unpaid insurance premium. Under New York law, if two parties to a contract each allege that the other breached the contract, and if one party's claim is time-barred and the other's claim is not, the untimely claim "is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time

---

[2] Although DOT argues that the Club's affirmative defense was not raised specifically, the court finds that the Club's statement that DOT failed to honor its contractual obligations was sufficient.

the claims asserted in the complaint were interposed." N.Y. C.P.L.R. § 203(d). Thus "claims and defenses that arise out of the same transaction as a claim asserted in the complaint are not barred" even where an independent action by one party might otherwise have been time-barred. *Bloomfield v. Bloomfield*, 97 N.Y.2d 188, 193, 764 N.E.2d 950, 952 (2001); *see also Int'l Fid. Ins. Co. v. Cnty. of Rockland*, 98 F. Supp. 2d 400, 410 n.2 (S.D.N.Y. 2000) (noting that N.Y. C.P.L.R. § 203(d) codifies the doctrine of equitable recoupment and applying the rule to contractual limitations periods). Section 203(d) functions "only as a shield for recoupment purposes, and does not permit the defendant to obtain affirmative relief." *DeMille v. DeMille*, 774 N.Y.S.2d 156, 158, 5 A.D.3d 428, 429 (App. Div. 2004).

Here, no genuine issue of material fact exists with regard to DOT's $195,000 claim for indemnification in the Merritt settlement.[3] *See Steamship II*, 2011 WL 3471524, **5-6. Thus, even though DOT's claim is time-barred, recoupment enables DOT to assert this otherwise untimely claim for indemnification against the Club as a shield against the Club's claim for $76,925.56 for the November 20, 2002, unpaid insurance premium. Accordingly, the court will grant summary judgment in favor of the Club on its claim for the unpaid premium, and will dismiss as contractually time-barred DOT's claims for indemnification, except that $76,925.56 may be asserted in recoupment to offset the Club's surviving claim. Thus, it appears that neither party can recover against the other.

---

[3] Indeed, the Club does not appear to dispute DOT's $195,000 claim other than to argue generally that DOT's claims are contractually time-barred and that DOT should have submitted its "disputes" to the Club's Board before filing suit. (*See* Pl.'s Reply, ECF No. 123, at 11.) ("The Court was correct . . . when it described DOT's 'remaining $195,000 claim for indemnification.'") It is clear from the evidence that the Club approved the $195,000 claim; thus, the Club's argument that DOT should have brought this claim before the Board is unavailing.

A separate Order follows.

<u>March 22, 2013</u>                                         <u>         /s/                                        </u>
Date                                                          Catherine C. Blake
                                                              United States District Judge